UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JOHNNIE MIRANTI,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     19-CV-7077(JS)(AYS)

AMALGAMATED   INDUSTRIAL   TOY   &
NOVELTY WORKERS OF AMERICA LOCAL
223;  AMALGAMATED   PRODUCTION   &
SERVICE EMPLOYEES UNION LOCAL 22;
and  INTERNATIONAL  UNION  OF  ALLIED
NOVELTY & PRODUCTION WORKERS, AFL-
CIO,

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:          Stephen Goldblatt, Esq.
                        44 Court Street, Suite 1217
                        Brooklyn, New York  11201

For Defendants:         Sheri Dorothy Preece, Esq.
                        McCarthy & Preece PLLC
                        118 North Bedford Road, Suite 100
                        Mount Kisco, New York  10549

SEYBERT, District Judge:

        On December 18, 2019, Johnnie Miranti ("Plaintiff")

initiated this action against Amalgamated Industrial Toy & Novelty

Workers of America Local 223 ("Local 223"), Amalgamated Production

& Service Employees Union Local 22 ("Local 22"), and International

Union  of  Allied,  Novelty  &  Production  Workers,  AFL-CIO

("International," and together with Local 223 and Local 22,

"Defendants") alleging violations of the Employee Retirement

Income Security Act of 1974 ("ERISA"), breach of contract, unjust

enrichment, and promissory estoppel based on Defendants' decision to deny Plaintiff access to certain union medical and severance benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  (Defs. Mot., ECF No. 25; Defs. Support Memo, ECF No. 25-2; Defs. Reply, ECF No. 29; Pl. Opp'n, ECF No. 28.) For the following reasons, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

<u>BACKGROUND</u>

Unless otherwise noted, the following facts are undisputed.[1]

---

[1] Unless otherwise noted, the following facts are taken from Defendants' Local Rule 56.1 Statement ("Defs. 56.1 Stmt.," ECF No. 25-1); Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1 Stmt.," ECF No. 28-4); and Defendants' Local Rule 56.1 Counterstatement ("Defs. 56.1 Counterstmt.," ECF No. 29-1).  Defendants' exhibits, which are attached to the Affidavit of Sheri Preece (ECF No. 25-4), are identified by numbers.  Plaintiff's exhibits, which are attached to the Affirmation of Stephen Goldblatt (ECF No. 28-5), are similarly identified by numbers.

As Defendants correctly point out, Plaintiff failed to submit a counterstatement to Defendants' Local Rule 56.1 Statement, as the Local Rules requires.  <u>See</u> Local Rule 56.1(b).  "Upon the failure to properly controvert a movant's statement of material fact, such statement 'will be deemed admitted for the purposes of the motion.'"  <u>Adams v. Liberty Mar. Corp.</u>, 407 F. Supp. 3d 196, 199 (E.D.N.Y. 2019) (quoting Local Rule 56.1(c)).  However, "a district court must ensure that there is support in the record for facts contained in unopposed Rule 56.1 statements before accepting those facts as true."  <u>United States v. Abady</u>, No. 03-CV-1683, 2004 WL 444081, at *3 (S.D.N.Y. Mar. 11, 2004) (citing <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140-43 (2d Cir. 2003)).  As a result, the uncontroverted statements in Defendants' Local Rule 56.1 Statement that the Court finds are supported by the record are deemed admitted for purposes of the pending cross-motions.

I.    Facts

      A.    Background and Plaintiff's Indictment

            International is a national labor union that represents
workers in many industries, including general manufacturing.
International is divided into multiple locals within the five
boroughs of New York City, such as Local 223.[2]  (See Am. Compl.,
ECF No. 16-2, ¶¶ 4-6.)  Plaintiff was employed by Local 223 for
approximately twenty years, from 1996 until August 16, 2016.
(Defs. 56.1 Stmt. ¶ 1.)  During that time, Plaintiff served as
Recording Secretary-Treasurer and an Executive Board member.  (Am.
Compl. ¶ 11.)  In this role, Plaintiff drafted all the meeting
minutes.  (Defs. 56.1 Stmt. ¶ 15.)

            On July 1, 2015, Plaintiff was indicted for his
participation in a kickback scheme related to his role as Trustee
to the Local 223 Sick Benefit Fund.  (Defs. 56.1 Stmt. ¶ 2); see
also United States v. Miranti, No. 15-CR-0415 (S.D.N.Y.).  The
grand jury indicted Plaintiff on three counts for conspiracy to
defraud the United States in violation of 18 U.S.C. § 371,
including: (1) conspiracy to solicit and receive kickbacks to
influence the operation of an employee benefit plan;
(2) conspiracy to embezzle from an employee benefit plan; and
(3) conspiracy to commit theft or embezzlement in connection with

_____

[2] In February 2017, Local 223 was merged into Local 22.

a health care benefit program.  (Defs. 56.1 Stmt. ¶ 2.)  At a July 15, 2015, Local 223 Executive Board meeting, Plaintiff informed the Executive Board of his indictment and stated that the allegations in the indictment were untrue.  (Id. ¶ 3.)  Defendants assert that Plaintiff "continuously professed his innocence to the Executive Board and never informed the Executive Board when he began negotiating a plea deal."  (Id. ¶ 4.)

B.    The Benefit Programs at Issue

Plaintiff claims that he is entitled to funds or coverage under three separate welfare employee benefit plans: (1) the Local 223 Severance Policy; (2) the Local 223 Lifetime Medical Benefits Policy; and (3) the International Non-Qualified Deferred Compensation ("NQDC") Plan.

1.    The Severance Policy

Local 223's Severance Policy entitles its members to receive severance "upon termination of office of employment by reasons of death, disability, or resignation."  (Defs. 56.1 Stmt. ¶ 13.)  The severance is paid out in weekly installments over a thirty-six-month period.  (Id.)  After Plaintiff's indictment, at a November 28, 2015 "special membership meeting" held to amend Local 223's Constitution and Bylaws, Plaintiff proposed a modification to the Severance Policy.  (Id. ¶ 14.)  Specifically, Plaintiff requested the Severance Policy be amended to include officers who were terminated "for any reason."  (Id.)  Plaintiff

4

testified that the Board approved the proposed modification "because my Board didn't want to hurt me, with everything I was going through, as far as the indictment," that is, "to make sure that I got my severance benefit." (Pl. Depo. Tr. at 49:17-24, Ex. 22, <u>attached to</u> Preece Aff.)

2.   Lifetime Medical Benefits Policy

Similarly, Local 223's Lifetime Medical Benefits Policy entitles members to a monthly Medicare Supplement Benefit "upon termination of office or employment or retainer . . . by reason of death, disability, or resignation." (Defs. 56.1 Stmt. ¶¶ 18, 21.) The Lifetime Medical Benefits Policy is provided through the Local 223 Sick Benefit Fund, which is an ERISA-governed welfare benefit fund. (<u>Id.</u> ¶¶ 19-20.) While the policy originally provided for a lifetime preferred provider organization plan, in 2012 the Executive Board, including Plaintiff, amended the policy to provide a Medicare supplement benefit. (<u>Id.</u> ¶¶ 21-23.)

At an August 17, 2015 Local 223 Executive Board meeting, Plaintiff proposed modifying the Lifetime Medical Benefits Policy to include a length of service requirement. (<u>Id.</u> ¶¶ 24-25.) After amendment, the provision read: "All Union Officers with at least fifteen (15) years of service will receive lifetime medical coverage for themselves and their spouse to be paid by the Union <u>upon their separation from employment</u>." (<u>Id.</u> ¶ 24 (emphasis added).) Notably, the change from termination "by reason of death,

disability, or resignation" to "separation from employment" was not reflected in the Executive Board meeting minutes. (Id. ¶ 25.) As Plaintiff later testified regarding the amendment, "I was there for over 15 years and I wanted to make sure that my lifetime medical benefits were secured." (Id. ¶ 26.)

### 3.   The NQDC Plan

International administers the NQDC Plan, an ERISA-governed plan that provides certain deferred compensation benefits to eligible International Officers and General Executive Board members. (Id. ¶¶ 29-30.) Under International's Constitution:

> The International Union, from its General Funds, shall establish a Non-Qualified Deferred Compensation and Severance Plan providing such benefits as may be determined by the General Executive Board for the International Officers and General Executive Board members. To be eligible for benefits (under the NQDC Plan), the International Officer or General Executive Board member must have retired from any position of office with the International Union, any subordinate body, and any benefit fund of the subordinate body or related to the subordinate body.

(Id. ¶ 31 (emphasis added).) The NQDC Plan is governed by the terms of the NQDC Plan Document, which provides in relevant part that "[t]he [Advisory] Committee shall have the sole right to reconcile, determine, interpret, and construe any question or dispute arising in connection with definitions of terms, rights, status or classification of Participants, or any other dispute arising under the [NQDC Plan]," and that "such reconciliation,

determination, interpretation or construction shall be final and conclusive." (Id. ¶ 32.)  The NQDC Plan Document further provides that only the Advisory Committee has the authority to determine eligibility and the right to participate in the NQDC Plan, and that "[n]o person shall have any vested right to the benefits provided by the [NQDC] Plan." (Id.)  Benefits from the NQDC Plan are paid from the general assets of International. (Id. ¶ 33.)

C.   Plaintiff's Guilty Plea and Termination

On August 8, 2016, Plaintiff pleaded guilty to one count of conspiracy to solicit and receive kickbacks to influence the operation of the Local 223 Sick Benefit Fund. (Id. ¶ 6.)  On August 16, 2016, Plaintiff was terminated from his employment as Union Officer of Local 223 and Trustee of the Sick Benefit Fund. (Id. ¶ 7.)  Plaintiff disputes this, arguing that he resigned from his position and pointing to his deposition testimony in support. (Pl. 56.1 Stmt. ¶ 3; Pl. Depo. Tr. at 59:3-7.)

On that same day, International placed Local 223 into temporary trusteeship. (Defs. 56.1 Stmt. ¶ 35.)  On September 28, 2016, International sent notice to all Local 223 members that Local 223 was to be placed into permanent trusteeship based on Plaintiff's conviction for crimes against the Local 223 Sick Benefit Fund. (Id. ¶ 36.)  On February 24, 2017, International sent notice to all members that Local 223 would merge into Local

22.  (Id. ¶ 38.)  As a result of the merger, the trusteeship of Local 223 was terminated.  (Id. ¶ 39.)

      D.   Plaintiff's ERISA Denials

      On September 13, 2016, International denied Plaintiff's initial claim for benefits from the NQDC Plan on the grounds that Plaintiff's conviction made it unlawful for International to pay Plaintiff additional compensation from the International's general assets.  (Id. ¶ 40.)  Specifically, International relied on 29 U.S.C. § 504(d), which prohibits individuals who are convicted of certain criminal acts from participating in, and from receiving salary from, a labor organization.  (Id.)  Similarly, on September 19, 2016, Local 223, acting through the International-appointed Trustee, denied Plaintiff's initial claim for benefits under the Lifetime Medical Benefits Policy on the grounds that providing that benefit would violate 29 U.S.C. § 504(d).  (Id. ¶ 41.)  Plaintiff unsuccessfully appealed the unfavorable determinations. (Id. ¶¶ 42-44.)

      Later, on June 14, 2017, Plaintiff submitted a second appeal and request for payment under the Severance Policy.  (Id. ¶ 45.)  International denied Plaintiff's request based on his indictment and subsequent attempt to amend the Local 223 Constitution and Bylaws prior to his removal from office.  (Id. ¶ 46.)  More than a year later, Plaintiff submitted a third appeal to the newly formed Local 22, arguing that he is entitle to

severance and to the benefits under the Lifetime Medical Benefit Policy because they are vested benefits under ERISA.  (Id. ¶ 47.) Local 22 denied Plaintiff's third appeal pursuant to 29 U.S.C. § 504(d); it also rejected Plaintiff's contention that the benefits had vested.  (Id. ¶ 48; see also Correspondence, Exs. 12-20, attached to Preece Aff.)

## II.  Procedure

Plaintiff initiated this action on December 18, 2019. Based on the foregoing allegations, Plaintiff asserts one cause of action under ERISA Section 502(a)(2), 29 U.S.C. § 1132, for International's denial of Plaintiff's request for payment under the NQDC Plan, as well as causes of action under New York State law for breach of contract, promissory estoppel, and unjust enrichment based on Defendants' denial of Plaintiff's request for payment under the NQDC Plan, Severance Policy, and Lifetime Medical Benefit Policy. (See generally Am. Compl.)  The parties completed discovery on December 8, 2020, and the instant motion practice ensued.

## DISCUSSION

## I.  Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material facts are those which might affect the outcome of the suit under

the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Wagner v. Chiari & Ilecki, LLP</u>, 973 F.3d 154, 164 (2d Cir. 2020) (quoting <u>Coppola v. Bear Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." <u>CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP</u>, 735 F.3d 114, 123 (2d Cir. 2013) (cleaned up). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as Plaintiff does here, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." <u>Hetchkop v. Woodlawn at Grassmere, Inc.</u>, 116 F.3d 28, 33 (2d Cir. 1997). Moreover, "the court is not to make assessments of the credibility of witnesses" on a motion for summary judgment, as "[c]redibility assessments, choices between conflicting versions of events, and weighing of the evidence are matters for the jury." <u>Id.</u>

On a motion for summary judgment the court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).  In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).  When drawing inferences from evidence in the record in favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts."  Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).

II.  Analysis

First, Defendants argue that Plaintiff's state law claims for breach of contract, promissory estoppel, and unjust enrichment are preempted by ERISA.  Second, with respect to Plaintiff's remaining claim for wrongful denial of benefits under ERISA, Defendants argue that International properly denied

Plaintiff's claim for benefits under the NQDC Plan.  The Court addresses these arguments in turn.

    A.   <u>Preemption</u>

        1.   <u>Applicable Law</u>

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).  To that end, "Section 502(a)(1)(B) of ERISA provides participants or beneficiaries with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans." <u>Arditi v. Lighthouse Int'l</u>, 676 F.3d 294, 299 (2d Cir. 2012) (citing 29 U.S.C. § 1132(a) ("ERISA Section 502")).  Moreover, ERISA contains "deliberately expansive" preemption provisions, <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 45-46 (1987), aimed at establishing a "uniform regulatory regime over employee benefit plans" and ensuring "employee benefit plan regulation is exclusively a federal concern," <u>Davila</u>, 542 U.S. at 208.  <u>See also</u> <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65-66 (1987) (discussing ERISA's "extraordinary pre-emptive power" which "converts an ordinary state common law complaint into one stating

a federal claim . . . .”).  ERISA Section 514 specifically provides that it “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.”  29 U.S.C. § 1144.  Essentially, “where a plaintiff brings a state law claim that is in reality an ERISA-claim cloaked in state-law language, ERISA’s preemption power will take effect.”  N. Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan, Inc., 953 F. Supp. 2d 419, 427 (E.D.N.Y. 2013).

 “Under the Supreme Court’s test in Davila, ERISA preempts a cause of action where: (1) ‘an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);’ and (2) ‘no other independent legal duty . . . is implicated by a defendant’s actions.’”  Arditi, 676 F.3d at 299 (quoting Davila, 542 U.S. at 210).  The Second Circuit has further clarified that, under the first prong of Davila, the plaintiff must show: “(a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B).”  Id. (citing Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir. 2011)).  To determine whether the plaintiff’s state law claims are preempted by ERISA, the Court must examine the plaintiff’s complaint, the statute on which the plaintiff’s claims are based, and the various plan documents.  Davila, 542 U.S. at 211.

2. <u>Application</u>[3]

i. *Davila* Prong One

The first <u>Davila</u> prong is satisfied because Plaintiff could have brought his claim under ERISA. <u>Davila</u>, 542 U.S. at 210. Indeed, he brought a claim under Section 502 in his Amended Complaint. <u>See</u> <u>Arditi</u>, 676 F.3d at 299 (finding first prong of <u>Davila</u> satisfied where the plaintiff initially filed an action seeking benefits pursuant to Section 502 of ERISA but then

---

[3] Although Plaintiff does not address this issue, the Court notes the programs in question are employee welfare benefit plans subject to an ERISA preemption analysis. <u>See</u> <u>Hall v. LSREF4 Lighthouse Corp. Acquisitions, LLC</u>, 220 F. Supp. 3d 381, 388 (W.D.N.Y. 2016) ("'Congress [only] pre-empted state laws relating to plans, rather than simply to benefits' because the concern of providing 'a uniform set of administrative procedures governed by a single set of regulations' only arises 'with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.'" (quoting <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 11 (1987))). Based on the undisputed record, applying the factors identified in <u>Fort Halifax</u>, the Court finds that Defendants' "undertaking involves the kind of ongoing administrative scheme inherent in a 'plan, fund, or program.'" <u>Okun v. Montefiore Med. Ctr.</u>, 793 F.3d 277, 279 (2d Cir. 2015). With respect to the Severance Policy, "[t]he term 'employee welfare benefit plan' has been held to apply to most, but not all, employer undertakings or obligations to pay severance benefits." <u>Hall</u>, 220 F. Supp. 3d at 389 (quoting <u>Schonholz v. Long Island Jewish Med. Ctr.</u>, 87 F.3d 72, 75 (2d Cir. 1996)); <u>see also</u> <u>id.</u> at 392 (distinguishing <u>Fort Halifax</u> and <u>James v. Fleet/Norstar Fin. Grp., Inc.</u>, 992 F.2d 463 (2d Cir. 1993)). The Severance Policy at issue here is more like the severance benefit plans at issue in <u>Okun</u> and <u>Schonholz</u> than in <u>Fort Halifax</u> and <u>Fleet/Norstar</u>, because the Severance Policy "necessitated both managerial discretion and a separate analysis of each employee in light of certain criteria," such as eligibility criteria, and "was not limited either to a single payment or to a short span of time," but rather would pay out in weekly installments over a 36-month period. <u>Schonholz</u>, 87 F.3d at 76-77.

voluntarily dismissed the complaint).  The first cause of action in Plaintiff's Amended Complaint is a claim for benefits under the NQDC Plan brought pursuant to Section 502 of ERISA.  (Am. Compl. ¶¶ 22-25.)  Moreover, the undisputed record shows that Plaintiff sought and was denied benefits under the Severance Policy and Lifetime Medical Benefits Policy.  See Arditi, 676 F.3d at 299 ("Arditi is the type of party who can bring an ERISA claim because he is a Plan participant and he is seeking benefits under the Plan . . . .").  There can be no doubt that Plaintiff is seeking benefits established by ERISA plans and is therefore a party who could bring a claim pursuant to ERISA Section 502.

Further, the actual claims asserted by Plaintiff, namely, breach of contract, promissory estoppel, and unjust enrichment, can be construed as colorable claims for benefits pursuant to Section 502 of ERISA.  See Arditi, 676 F.3d at 299 (citing Montefiore, 642 F.3d at 328).  To arrive at this conclusion, the Court has considered the distinction between claims concerning a "right to payment" versus claims involving an "amount of payment."  Montefiore, 642 F.3d at 331.  Whereas right-to-payment claims "implicate coverage and benefits established by the terms of the ERISA benefit plan," which may be brought under Section 502(a)(1)(B), amount-of-payment claims are "typically construed as independent contractual obligations between the provider and . . . the benefit plan."  Id.  Montefiore "teaches

that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of employee benefit plan, itself." Olchovy v. Michelin N. Am., Inc., No. 11-CV-1733, 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011), report and recommendation adopted, 2011 WL 4916564; see also Montefiore, 642 F.3d at 331-32 (approving district court's approach to review the at-issue claims and plan documents to determine whether the plaintiff's claims are colorable claims under ERISA); Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 114 (2d Cir. 2008); N. Shore-Long Island Jewish Health Care Sys., Inc., 953 F. Supp. at 438.

Here, Plaintiff's state law claims fit comfortably in the "territory of a right to payment claim." N. Shore-Long Island Jewish Health Care Sys., Inc., 953 F. Supp. 2d at 440. Plaintiff's efforts to collect under the various plans at issue here "implicate coverage and benefits established by the terms of the ERISA benefit plan[s]," because they implicate coverage determinations under the terms of each Policy and Plan. See Montefiore, 642 F.3d at 331 (holding claims for reimbursement "appear to implicate coverage determinations under the relevant terms of the Plan, including denials of reimbursement because . . . 'the member is not eligible'"); Josephson v. United Healthcare Corp., No. 11-CV-3665,

2012 WL 4511365, at *3 (E.D.N.Y. Sept. 28, 2012) (Seybert, J.) (concluding step two of _Davila_'s first prong satisfied where some of the reimbursement claims at issue "were denied for reasons that would implicate coverage determinations under the terms of the United benefit plans"); _Beth Israel Med. Ctr. v. Goodman_, No. 12-CV-1689, 2013 WL 1248622, at *3 (S.D.N.Y. Mar. 26, 2013); _N. Shore-Long Island Jewish Health Care Sys., Inc._, 953 F. Supp. 2d at 440 (collecting cases).  Put simply, Plaintiff sought to collect under the ERISA benefit plans, and International or Local 223 denied his claims and subsequent appeals based on the plan documents and relevant federal law.  As a result, Plaintiff's claims could have been brought under ERISA.

### ii.  _Davila_ Prong Two

Even if the first prong of the _Davila_ test is satisfied, a claim is not preempted by ERISA if "some other, completely independent duty forms _another_ basis for legal action."  _Enigma Mgmt. Corp. v. Multiplan, Inc._, 994 F. Supp. 2d 290, 301 (E.D.N.Y. 2014) (emphasis in original) (quoting _Montefiore_, 642 F.3d at 332).  As a result, the Court considers whether Plaintiff's claims for breach of contract, promissory estoppel, or unjust enrichment implicate some "other independent legal duty" per _Davila_'s second prong.  "A state law claim does not raise an independent legal duty if liability derives entirely from the particular rights and obligations established by the benefit plans."  _Id._  But there is

no preemption where the benefit arose from a separate promise and did "not require a court to review the propriety of an administrator's or employer's determination of benefits." Stevenson v. Bank of N.Y. Co., Inc., 609 F.3d 56, 61 (2d Cir. 2010).

Plaintiff claims that Defendants have been unjustly enriched by withholding benefits to which he is entitled. He further claims that Defendants promised under the respective plans to pay out benefits if certain criterion were met, a promise that Plaintiff relied on to his detriment when Defendants allegedly violated their obligations under the plans by denying his claims. In response, Defendants argue that they were entitled to deny payment under the plans under the respective plan provisions and federal law. The Court agrees with Defendants and finds that Plaintiff's state law claims are "claim[s] for unpaid benefits that fall[] squarely within the terms of the ERISA plan and do[] not raise any independent legal obligation." Enigma, 994 F. Supp. 2d at 301 (citations omitted); see also Devlin v. Transp. Commc'ns Int'l Union, 173 F.3d 94, 101 (2d Cir. 1999) (affirming district court finding that the plaintiffs' breach-of-contract claims were preempted under ERISA); Kelly v. Deutsche Bank Sec. Corp., No. 09-CV-5378, 2010 WL 2292388, at *1 (E.D.N.Y. June 3, 2010) (Seybert, J.) ("It is well-settled that ERISA preempts common law state claims that 'do not attempt to remedy any violation of a legal

duty independent of ERISA.'   This includes breach of contract claims." (internal citation omitted)); N. Shore-Long Island Jewish Health Care Sys., Inc., 953 F. Supp. 2d at 443 (finding the plaintiff's unjust enrichment and quantum meruit claims "similarly fail to establish an independent duty under Davila or Montefiore").

The Second Circuit's decision in Stevenson is distinguishable, as Defendants correctly argue.  In that case, the plaintiff left the employ of the defendant bank.  Stevenson, 609 F.3d at 60.  Nevertheless, the bank promised to maintain the plaintiff's benefits under its pension plan, notwithstanding the fact pension beneficiaries would normally lose coverage upon ending their employment with the bank.  Id.  The Stevenson Court held that the plaintiff's complaint did "not derive from the particular rights and obligations established by any benefit plan . . . but rather, from a separate promise that references various benefit plans." Arditi, 676 F.3d 294 (quoting Stevenson, 676 F.3d at 300 (cleaned up)).  Put otherwise, "[w]hatever rights the plaintiff had arose not from the bank's plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan." Id. (distinguishing Stevenson). Conversely, in the instant action, there are no comparable promises separate and independent from the three ERISA plans that governed Plaintiff's access to severance, lifetime medical, and deferred compensation benefits.  Defendants "made no promises of benefits

separate and independent from the benefits under the Plan[s]." Id. at 301.

Plaintiff does not meaningfully address Davila's inquiry or explain why its analysis does not apply here. Instead, Plaintiff cites to a pair of cases involving vested ERISA benefits. (Pl. Opp'n at 10 (discussing Am. Federation of Grain Millers, AFL-CIO v. Int'l Multifoods Corp., 116 F.3d 976 (2d Cir. 1997); Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365 (1990)).) But Plaintiff fails to controvert the undisputed evidence that the employee welfare benefit plans from which Plaintiff seeks to recover are not vested benefits. To the contrary, Defendants have submitted evidence showing that the Local 223 and International policies and plans could be amended, modified, or terminated at any time. "Unlike pension plan benefits, the benefits provided by a welfare plan generally are not vested and an employer can amend or terminate a welfare plan at any time." Am. Fed'n of Grain Millers, AFL-CIO, 116 F.3d at 979. Indeed, Plaintiff facilitated the amendment of the eligibility requirements governing the Severance Policy and Lifetime Medical Benefits Policy shortly after he was indicted.[4]

---

[4] Nor does Guidry control here. In Guidry, the Supreme Court addressed separate provisions of ERISA as applied to a pension benefit plan, not a welfare benefit plan like those at issue in this litigation.

In sum, Defendants' conduct did not create a sufficiently independent duty under Davila; rather, Defendants denied Plaintiff's requests for benefits based on the terms of the at-issue plans and federal law.  Therefore, Plaintiff's state law claims raise issues that are "inextricably intertwined with the interpretation of Plan coverage and benefits," which the Court turns to next.  Montefiore, 642 F.3d at 332.

B.   Claim for Unpaid Benefits

Having concluded Plaintiff's state law claims are preempted by ERISA, the Court turns to Plaintiff's remaining cause of action under Section 502 of ERISA, which seeks recovery for unpaid benefits under the NQDC Plan.

1.   Applicable Law

"A denial of benefits challenged under ERISA § 502(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622 (2d Cir. 2008) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (cleaned up)).  Where the fiduciary establishes that it has such discretionary authority, "the benefits decision is reviewed under the arbitrary and capricious standard."  Id. (citing Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002)).  Under the "deferential" arbitrary and

capricious standard, the court will overturn a fiduciary's denial "only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)); see also O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995) (holding denial is arbitrary and capricious where plan administrator or fiduciary has "impose[d] a standard not required by the plan's provisions, or interpret[ed] the plan in a manner inconsistent with its plain words"). The Second Circuit defines substantial evidence as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (quoting Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)). "The court may not upset a reasonable interpretation by the administrator." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995) (citations omitted).

2. Application

To begin, the terms of the NQDC Plan Document grant International's Advisory Committee discretionary authority to determine eligibility for benefits, including "the sole right to reconcile, determine, interpret, and construe any question or

dispute arising in connection with definitions of terms, rights, status or classification of Participants," and further provides that its interpretation is "final and conclusive."  Importantly, NQDC Plan Document grants sole authority to the Advisory Committee to "determine eligibility for benefits and the right to participate in the Plan."  It further clarifies that benefits under the NQDC Plan are not vested.  Last, International's "General Executive Board" has "exclusive control over and management of the assets of the Plan."  As a consequence of this grant of discretion, the Court's inquiry is whether International acted arbitrarily and capriciously in denying Plaintiff's claim for benefits. Cirincione v. Plumbers Loc. Union No. 200 Pension Fund, No. 07-CV-2207, 2009 WL 3063056, at *3 (E.D.N.Y. Sept. 24, 2009) (Seybert, J.) (applying arbitrary and capricious standard where pension plan granted reviewing board the "exclusive right to interpret the Plan and to decide any matters arising thereunder in connection with the administration of the Plan"), aff'd, 404 F. App'x 524 (2d Cir. 2010); see also Ganton Technologies, Inc. v. Nat'l Indus. Grp. Pension Plan, 76 F.3d 462, 466 (2d Cir. 1996) (applying arbitrary and capricious standard where the plan explicitly provided that the trustees had authority to "resolve all disputes and ambiguities relating to the interpretation of the Plan"); Jordan, 46 F.3d at 1270 (applying arbitrary and capricious standard where the plan

"confer[red] upon the Retirement Committee the power of 'interpretation'").

International's Advisory Committee based its adverse decision on (a) federal law, in particular 29 U.S.C. § 504, which bars any member in a labor organization from receiving any salary when he has been barred from his office or position; and (b) its interpretation of the International Constitution, which provides that only retirees are eligible for benefits under the NQDC Plan. The Court addresses these bases in turn.

(a)   Section 504

Section 504 of the Labor-Management Reporting and Disclosure Act (the "LMRDA") bars any person who has been convicted of certain enumerated offenses, including bribery, extortion, and embezzlement, from serving as an officer or employee of any labor organization. 29 U.S.C. § 504(a). The provision further prohibits any person who has been so barred from receiving "any salary which would be otherwise due such person by virtue of such office or position" until the conviction has been reversed, in which case the bar is lifted and the individual is paid out of escrow for the period of time during which a salary would have been due, or sustained, in which case the withheld salary is returned to the employer. Id. § 504(d). Any person who willfully violates Section 504 faces a fine not to exceed $10,000 and/or imprisonment not to exceed five years. Id. § 504(b). In enacting Section 504(a),

24

Congress sought "to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the [LMRDA]." 29 U.S.C. § 401(c); see also Nass v. Local 348, Warehouse Production, Sales and Servs. Emps. Union, 503 F. Supp. 217, 220 (E.D.N.Y. 1980) ("[I]n enacting § 504 Congress sought to eliminate the intolerable and corrupt conditions which prevailed throughout segments of organized labor during the 1950's.").

Plaintiff argues that Section 504(d) applies only to salaries, not to what he incorrectly claims are vested benefits. (Pl. Opp'n at 16.)  Defendants counter that because the NQDC Plan benefits are paid from the general assets of International, they reasonably believed that paying Plaintiff out of these funds would violate Section 504(d) and expose International to liability under the statute.  (Defs. Support Memo at 17-19; Defs. Reply at 15-17.) The parties have not cited any authority on point, and the issue appears to be one of first impression.  Based on its review of Section 504(d) and caselaw interpreting the provision, the Court finds that Plaintiff's construction of the statute is stronger: the purpose of Section 504(d) is "to protect the interests of a debarred union officer whose conviction was improperly obtained by the government and later reversed." McMahan v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 858 F. Supp. 529,

537-38 (D.S.C. 1994) (extensively reviewing the statute's enactment history).   However, in the absence of controlling authority, the Court cannot say that International's construction of the provision is unreasonable or "erroneous as a matter of law." This is especially the case since the NQDC benefits would be paid out from International's general assets, i.e., the benefits would be paid out by International and not by a separate benefit fund. Rather, where, as here, a claimant and fiduciary offer "two competing yet reasonable interpretations," the court "must accept that offered by the administrator." Wegmann v. Young Adult Inst., Inc., Trustees of Supplemental Pension Plan for Certain Mgmt. Emps. of Young Adult Inst., No. 20-CV-1147, 2021 WL 3573753, at *1 (2d Cir. Aug. 13, 2021) (quoting Pagan, 52 F.3d at 443 (cleaned up)); see also Jordan, 46 F.3d at 1273.   Accordingly, the Court finds that International's reliance on Section 504(d) in denying Plaintiff benefits under the NQDC Plan was supported by substantial evidence and not arbitrary or capricious.

(b)   Plaintiff's Termination

The second basis for International's decision further supports the Court's conclusion.   As noted, to be eligible for benefits under the NQDC Plan, the member "must have retired" from the Union.   According to Defendants, Plaintiff did not retire but rather was terminated due to his felony conviction.   Plaintiff disputes whether he resigned, citing to his deposition testimony

in support.  Plaintiff's testimony on this point is inconsistent. (Id. at 59:16-22 (testifying the attorney for International "came down to New York . . . and said to me, 'I think it is best that you leave.' And I said to him, 'It was going to happen anyway.'").) It is further undermined by the termination letter Plaintiff received on August 16, 2016 -- eight days after he pleaded guilty -- in which International "relieved" Plaintiff of his duties as the Business Manager of Local 223.  Thus, there is nothing in the record to support Plaintiff's claim that he retired other than his "own contradictory and incomplete testimony." Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005) (affirming district court grant of summary judgment where the plaintiff's testimony raising material issues of fact "was largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities" that "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint").  But even setting aside whether this case is one of those situations in which the Jeffreys rule can be applied, the Court is unable to conclude that International's decision was without reason.  Rather, a reasonable mind could find the evidence before International's Advisory Committee, including the termination letter, was sufficient to support its conclusion that Plaintiff had been terminated from his position and, therefore,

was not eligible for the NQDC benefits per the International Constitution.

*   *   *

Because the Court finds that Plaintiff's New York State law causes of action are preempted by ERISA, and Defendants are entitled to judgment as a matter of law on his remaining ERISA claim, the Court need not address Defendants' remaining contentions regarding Plaintiff's alleged breach of his fiduciary duties or unclean hands in seeking the benefits. Moreover, applying the relevant factors, the Court declines to exercise its discretion to award Defendants attorney's fees under ERISA. See 29 U.S.C. § 1132(g)(1); Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 254-55 (2010); Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 879 (2d Cir. 1987).

To the extent not expressly addressed, the Court has considered the parties' remaining arguments and finds them to be without merit.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

<u>CONCLUSION</u>

Accordingly, for the stated reasons, **IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 25) is GRANTED; and Plaintiff's cross-motion for summary judgment (ECF No. 28) is DENIED.  The Clerk of the Court is respectfully directed to enter judgment accordingly and mark this case CLOSED.


**SO ORDERED.**


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June  _23_ , 2022
       Central Islip, New York